# In the United States Court of Federal Claims

## OFFICE OF SPECIAL MASTERS
### No.   05-207V
### Filed: March 27, 2014

### NOT TO BE PUBLISHED[1]

```
*********************************************
RICHARD CHRISTOPHER YOUNG and        *
CHRISTINA YOUNG , as parents and natural   *
guardians of KLY, a minor,               *
                                         *     Vaccine Act Denial of Interim
                      Petitioners,       *     Costs; Expert Costs; Reasonable
                                         *     Basis; Reasonable Costs
  v.                                     *
                                         *
SECRETARY OF HEALTH AND HUMAN            *
SERVICES,                                *
                                         *
                      Respondent.        *
*********************************************
```

_Clifford Shoemaker_, _Shoemaker & Associates, Vienna, VA, for Petitioners._
_Heather Pearlman_, _U.S. Department of Justice, Washington, DC, for Respondent._

### DECISION DENYING PETITIONERS' APPLICATION FOR INTERIM COSTS

**HASTINGS,** _**Special Master**_.

In this case under the National Vaccine Injury Compensation Program (hereinafter "the Program"), Richard and Christina Young ("Petitioners") seek, pursuant to 42 U.S.C. § 300aa-15(e),[2] an award of interim costs for prepayment of $5000 in expert fees demanded by Petitioners' expert and $2,400 for certain medical testing that Petitioners' expert indicates is necessary in order for her to prepare an expert report in this case.   After careful consideration, I have determined to deny the request in full.

---

[1]   Because I have designated this document to be published, this document will be made available to the public unless Petitioner files, within fourteen days, an objection to the disclosure of any material in this decision that would constitute "medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of privacy."  _See_ 42 U.S.C. § 300aa-12(d)(4)(B); Vaccine Rule 18(b).

[2]   The applicable statutory provisions defining the Program are found at 42 U.S.C. § 300aa-10 _et seq_. (2006).   Hereinafter, for ease of citation, all § references will be to 42 U.S.C. (2006).

# I

# PROCEDURAL BACKGROUND

## A. Omnibus Autism Proceeding

This case concerning KLY is one of more than 5000 cases filed under the Program in which it has been alleged that a child's disorder known as "autism," or a similar disorder, was caused by one or more vaccinations.   A brief summary of that proceeding follows.

In anticipation of dealing with such a large group of cases involving a common factual issue--*i.e.*, whether vaccinations can cause autism--the Office of Special Masters ("OSM") devised special procedures. On July 3, 2002, the Chief Special Master, acting on behalf of the OSM, issued a document entitled the Autism General Order # 1,[3]  which set up a proceeding known as the "Omnibus Autism Proceeding" (OAP). In the OAP, a group of counsel selected from attorneys representing petitioners in the autism cases, known as the Petitioners' Steering Committee ("PSC"), was charged with obtaining and presenting evidence concerning the general issue of whether those vaccines can cause autism, and, if so, in what circumstances. The evidence obtained in that general inquiry was to be applied to the individual cases. (*Autism General Order # 1*, 2002 WL 31696785, at *3.)

Ultimately, the PSC elected to present two different theories concerning the causation of autism.   The first theory alleged that the *measles* portion of the MMR vaccine can cause autism, in situations in which it was alleged that thimerosal-containing vaccines previously weakened an infant's immune system. That theory was presented in three separate Program "test cases," during several weeks of trial in 2007. The second theory alleged that the *mercury* contained in the thimerosal-containing vaccines can *directly affect* an infant's brain, thereby substantially contributing to the development of autism. The second theory was presented in three additional "test cases" during several weeks of trial in 2008.

On February 12, 2009, decisions were issued concerning the three "test cases" pertaining to the PSC's *first* theory. In each of those three decisions, the petitioners' causation theories were rejected.   I issued the decision in *Cedillo v. HHS*, No. 98-916V, 2009 WL 331968 (Fed. Cl. Spec. Mstr. Feb. 12, 2009). Special Master Patricia Campbell-Smith issued the decision in *Hazlehurst v. HHS,* No. 03-654V, 2009 WL 332306 (Fed. Cl. Spec. Mstr. Feb. 12, 2009). Special Master Denise

---

[3]   The *Autism General Order # 1* is published at 2002 WL 31696785, 2002 U.S. Claims LEXIS 365 (Fed.Cl.Spec.Mstr. July 3, 2002). I also note that the documents filed in the Omnibus Autism Proceeding are contained in a special file kept by the Clerk of this court, known as the "Autism Master File." An electronic version of that File is maintained on this court's website. This electronic version contains a "docket sheet" listing all of the items in the File, and also contains the complete text of most of the items in the File, with the exception of a few documents that are withheld from the website due to copyright considerations or due to § 300aa-12(d)(4)(A). To access this electronic version of the Autism Master File, visit this court's website at http://www.uscfc.uscourts.gov/docket-omnibus-autism-proceeding

Vowell issued the decision in *Snyder v. HHS*, No. 01-162V, 2009 WL 332044 (Fed. Cl. Spec. Mstr. Feb. 12, 2009).

Those three decisions were later each affirmed in three different rulings, by three different judges of the U.S. Court of Federal Claims. *Hazlehurst v. HHS*, 88 Fed. Cl. 473 (2009); *Snyder v. HHS*, 88 Fed. Cl. 706 (2009); *Cedillo v. HHS*, 89 Fed. Cl. 158 (2009). Two of those three rulings were then appealed to the U.S. Court of Appeals for the Federal Circuit, again resulting in affirmances of the decisions denying the petitioners' claims. *Hazlehurst v. HHS*, 604 F. 3d 1343 (Fed. Cir. 2010); *Cedillo v. HHS*, 617 F. 3d 1328 (Fed. Cir. 2010).

On March 12, 2010, the same three special masters issued decisions concerning three separate "test cases" pertaining to the PSC's *second* causation theory. Again, the Petitioners' causation theories were rejected in all three cases. *King v. HHS*, No. 03-584V, 2010 WL 892296 (Fed.Cl.Spec.Mstr. Mar. 12, 2010); *Mead v. HHS*, No. 03-215V, 2010 WL 892248 (Fed.Cl.Spec.Mstr. Mar. 12, 2010); *Dwyer v. HHS*, No. 03-1202V, 2010 WL 892250 (Fed.Cl.Spec.Mstr. Mar.12, 2010). None of the petitioners elected to seek review any of those three decisions.

Thereafter, petitioners remaining in the OAP were required to file amended petitions and submit case-specific expert reports in support of their claim if they elected to pursue their petitions for vaccine compensation. (*See* Autism Master File, Autism Update filed Jan. 12, 2011 at 4.)[4]

**B. Case-specific proceedings**

On February 10, 2005, Petitioners filed a "Short-Form Autism Petition for Vaccine Compensation," on behalf of KLY under the Vaccine Act. (Pet. at 1.) Petitioners thereby alleged that KLY's autism was vaccine-caused, but provided no further details regarding the nature of the alleged vaccine-related injury. (*Id.*)

During the pendency of the OAP, Petitioners filed the required medical records, as ordered by the court in anticipation of the rulings from the test cases. (See Pet. Exs. 1-22.) On July 27, 2010, Respondent filed a Statement indicating that Petitioners' claim was timely filed within the Vaccine Act's statute of limitations, and involved a diagnosed autism disorder. (Notice, ECF No. 43.)

Subsequent to the conclusion of the OAP test cases, Petitioners on August 15, 2011, filed an Amended Petition, alleging that KLY's MMR vaccination of August 8, 2002, caused him to develop an encephalopathy. Petitioners were ordered on August 26, 2011, to file an expert report in support of their Amended Petition by no later than November 28, 2011. (Order, ECF No. 48.) For over one year thereafter, Petitioners' counsel filed status reports indicating that counsel had sent KLY's medical records to an expert for "his" review and that additional time would be

---

[4] An electronic copy of the Autism Update filed January 12, 2011, can be obtained from the electronic version of the Autism Master File at http://www.cofc.uscourts.gov/docket-omnibus-autism-proceeding.

required for the expert to review the material and ascertain if "he" could prepare an expert report. (See Status Report, ECF No. 49, Nov. 28, 2011; Status Report, ECF No. 50, Jan. 27, 2012; Status Report, ECF No. 51, Mar. 27, 2012; Status Report, ECF No. 52, May 30, 2012; Status Report, ECF No. 53, July 30, 2012; Status Report, ECF No. 54, Sept. 28, 2012.)

On November 2, 2012, I expressed my concern that case this was not proceeding to resolution more quickly, and ordered Petitioners to identify their medical expert and explain the delay in producing their expert report.  (*See* Order, ECF No. 55.).   On January 18, 2013, Petitioners filed a motion for a further enlargement of time, indicating that the expert who was reviewing their case and preparing an expert report was Theresa A. Deisher, Ph.D.   (Motion, ECF No. 56.) [5]   Along with the Motion, Petitioners filed a document that they described in that Motion as an "Affidavit" of Dr. Deisher.   The "Affidavit" was 28 pages long, but was unsigned by Dr. Deisher.   (See page 28 of that document.)   The document, as Petitioners noted in their Motion, provided a *general description* of Dr. Deisher herself and her work on a theory as how vaccines might cause autism.   However, it *did not mention KLY's case specifically*.

On April 22 and July 29, 2013, I granted Petitioners further extensions of time to file Dr. Deisher's expert report specific to this case, since, according to Petitioners' motions, Dr. Deisher had been unable to prepare her report due to clinical commitments.   However, in light of the protracted proceedings in this case, in the Order of July 29, 2013, I warned Petitioners that if their expert report was not filed within the next three months, absent good cause shown, I would dismiss this case for failure to prosecute.

Petitioners have yet to file a case-specific expert report in support of their claim, despite being under court order for more than two and one-half years to do so.

### C. Petitioners' application for interim costs

On August 15, 2013, Petitioners filed a motion that both sought another extension of time to file Dr. Deisher's report, and also constituted an application for interim costs. (Hereinafter, "Pet. App.")   Petitioners' application sought $5000 to cover the cost of a retainer charged by their expert Dr. Deisher, plus $2,400 for the prepayment of costs for certain medical testing ordered by Dr. Deisher.   Respondent opposed Petitioners' application for interim costs.   ("R. Resp.," filed on Sep. 20, 2013.)   Petitioners then filed another memorandum concerning the fee application on October 11, 2013.   ("Pet. Reply.")

---

[5]   This filing occurred after I had convened a status conference in a separate but similar case involving the same attorney and Dr. Deisher on January 8, 2013, to discuss my concerns regarding the use of Dr. Deisher, who is not a medical doctor, as a medical expert. (See *Fuesel v. HHS*, No. 02-95V, Decision Denying Petitioners' Application for Interim Costs filed March 19, 2014, slip. op. at 4.)

## II

## LEGAL STANDARD FOR AWARDING ATTORNEYS' FEES AND COSTS

### A.   In general

Special masters have the authority to award "reasonable" attorneys' fees and litigation costs in Vaccine Act cases.   § 300aa-15(e)(1).   This is true even when a petitioner is unsuccessful on the merits of the case, if the petition was filed in good faith and with a reasonable basis.   *Id*. "The determination of the amount of reasonable attorneys' fees [and costs] is within the special master's discretion."   *Saxton v. HHS*, 3 F.3d 1517, 1520 (Fed. Cir. 1993); *see also Shaw v. HHS*, 609 F.3d 1372, 1377 (Fed. Cir. 2010).

Further, as to all aspects of a claim for attorneys' fees and costs, the burden is on the *petitioner* to demonstrate that the attorneys' fees claimed are "reasonable."   *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983); *Sabella v. HHS*, 86 Fed. Cl. 201, 215 (Fed. Cl. 2009); *Rupert v. HHS*, 52 Fed.Cl. 684, 686 (2002); *Wilcox v. HHS*, No. 90-991V, 1997 WL 101572, at *4 (Fed. Cl. Spec. Mstr. Feb. 14, 1997).   The petitioner's burden of proof to demonstrate "reasonableness" applies equally to *costs* as well as attorneys' fees.   *Perreira v. HHS*, 27 Fed. Cl. 29, 34 (1992), *aff'd* 33 F.3d 1375 (Fed. Cir. 1994).

### B.   "Interim" fees and costs

In *Avera v. HHS*, 515 F.3d 1343 (Fed. Cir. 2008), the U.S. Court of Appeals for the Federal Circuit indicated that an award of "interim" fees and costs--that is, an award *prior* to the entry of a final judgment on the initial question of whether the Petitioner is entitled to compensation for the alleged vaccine injury--can be appropriate in Vaccine Act cases.   *Id*. at 1352.   The *Avera* court did not specify in what *particular* circumstances such an award might appropriately be issued, but the court made it clear that such "interim" awards *can* be appropriate.   *Id*.   The Federal Circuit gave the same indication again in *Shaw*.   *Shaw*, 609 F.3d at 1374.

## III

## RESPONDENT'S GENERAL LEGAL ARGUMENT THAT AN AWARD OF INTERIM FEES AND COSTS IS ALWAYS INAPPROPRIATE PRIOR TO RESOLUTION OF THE MERITS

In *Avera v. HHS*, the U.S. Court of Appeals for the Federal Circuit indicated that an award of "interim fees"--that is, an award of fees *prior* to the entry of a final judgment on account of the alleged vaccine injury--can be appropriate in Vaccine Act cases.   *Avera*, 515 F.3d at 1352. However, the *Avera* court did not specify in what *particular* circumstances such an award might appropriately be issued.   *Id*.   In this case, Respondent first raises a *legal argument* that an "interim" award is appropriate only in a very narrow set of circumstances--*i.e.*, either after an award of compensation resulting from the alleged vaccine injury has been made to the Petitioners, or after a judgment denying such compensation has been entered by the court.   (R. Resp., pp 5-9.)

I reject Respondent's legal argument. *Avera* clearly held that interim awards are permissible. *Avera*, 515 F.3d at 1352. Further, the Federal Circuit's opinion in *Shaw* stated unequivocally that the *Avera* court had rejected "the government's argument that a fee award *is only permissible after judgment* under §300aa-15." *Shaw*, 609 F.3d at 1374 (emphasis added). Thus, the *Shaw* court *explicitly interpreted* the *Avera* court to have rejected the very argument that Respondent raises here, that a fee award "is only permissible after judgment." *Id.* I and other Special Masters have found on numerous occasions that an award of interim fees is permissible prior to the entry of judgment or an award of compensation resulting from the alleged vaccine injury. *See, e.g. Bender v. HHS*, No. 11-693V, 2014 WL 448860, at *2-4 (Fed. Cl. Spec. Mstr. Jan. 15, 2014). Special masters, rather, clearly have *discretion* to consider whether an interim award is appropriate in a specific case. *Saxton*, 3 F.3d at 1520.

## IV

## THE CIRCUMSTANCES OF THIS CASE DO NOT JUSTIFY THE REQUESTED AWARD OF INTERIM COSTS

### A. Overview

I have reviewed and carefully considered Petitioners' Application, as well as all the filings from both parties concerning Petitioners' Application. I find that the circumstances of this case clearly *do not* justify an award for the interim costs sought by Petitioners at this time. I will not reiterate each of the many deficiencies in Petitioners' application, which were set forth in Respondent's Response. I will instead discuss the major weaknesses that prevent me from awarding interim costs in this claim at this time: 1) Petitioners have not established that a reasonable basis exists to proceed in the prosecution of this claim; and 2) Petitioners have not established that the costs sought are reasonable.

As discussed above, under the Vaccine Act, Petitioners *may* recover reasonable attorneys' fees and costs even if they have not established entitlement to compensation for their injury, if their petition was filed in good faith, possessed a reasonable basis, and the requested fees and costs are *reasonable*.[6] § 300aa-15(e)(1); *Perreia*, 27 Fed. Cl. at 34. In the instant case it is not clear at this stage of the proceeding whether or not Petitioners have a reasonable basis to proceed, or whether the requested costs are reasonable.

### B. Petitioners have not established a reasonable basis to proceed.

Since Petitioners' claim is still pending, an award of interim costs is permissible only if Petitioners can demonstrate that their claim possesses a reasonable basis. *Perreia*, 27 Fed. Cl. at 34. While a claim may possess a reasonable basis at the time of its filing, the reasonableness of further pursuing the claim may come into question later in the proceeding through either the

---

[6] Under the Vaccine Act, Petitioners are entitled to an award of reasonable fees and costs if they prevail on their vaccine injury claim. § 300aa-15(e)(1).

introduction of new evidence or an inability to demonstrate supporting evidence.   *Id.* at 33. Petitioners assert that a reasonable basis exists for the prosecution of this claim because they have filed a complete set of medical records, and they have an "expert willing to testify."   (Pet. Reply at 4.)   However, a reasonable basis to proceed in the prosecution of this claim requires more than the filing of medical records and retaining an "expert willing to testify."

As an initial matter, the medical records filed to date do not demonstrate or even suggest vaccine causation.   Accordingly, I cannot find a reasonable basis based on the medical records alone.

Additionally, while Petitioners' have filed a somewhat vague *general* affidavit of their expert Dr. Deisher, concerning herself and her work, Dr. Deisher has yet to offer a *case-specific* expert opinion in this case.   Dr. Deisher has never, to my knowledge, testified in a claim before the Office of Special Masters.   Nor is she a medical doctor.   Accordingly, I do not have sufficient evidence to conclude that this claim possesses a reasonable basis to proceed, based merely upon counsel's assertion that Dr. Deisher might in the future offer a case-specific opinion favorable to Petitioners in this case.   While Dr. Deisher may eventually offer a reliable opinion regarding causation in this matter, sufficient to establish a reasonable basis to proceed in the prosecution of this claim, at this time she has yet to do so.   *Perreia,* 33 F.3d at 1377 ("Congress must not have intended that every claimant, whether being compensated or not under the Vaccine Act, collect attorney fees and costs by merely having an expert state an unsupported opinion that the vaccine was the cause in-fact of the injury").   Accordingly, at this time, Petitioners have not demonstrated a reasonable basis to proceed with the prosecution of this claim, and therefore I may not award interim costs.

### C.   Petitioners have not established that the interim costs sought are reasonable.

Petitioners seek $5000 to pay Dr. Deisher's retainer, as well as $2,400 for medical testing to be performed at the recommendation of Dr. Deisher. The Vaccine Act indicates that *reasonable* costs may be awarded to Petitioners.   § 300aa-15(e)(1).   However, at this stage of the proceedings I cannot determine, for a number of reasons, whether or not the costs Petitioners seek are reasonable.

As an initial matter, as discussed above, Dr. Deisher has yet to offer a medical expert opinion in this case, she has not testified in previous vaccine cases, she has been subject to criticism in the scientific community, [7] and she is not a medical doctor.   Accordingly, I do not

---

[7]   As discussed by former Chief Special Master Campbell-Smith in reviewing a discovery request in another case related to a proposed study by Dr. Deisher concerning vaccines and autism spectrum disorders, a panel of Dr. Deisher's peers -- *i.e.*, National Institutes of Health reviewers evaluating a study proposed by Dr. Deisher -- offered three independent critiques of her proposal, opining that her proposal was "notably devoid of 'strengths,' but replete with 'weaknesses,'" indicating a "very poor view of her proposed study."   *Mostovoy v. HHS*, No. 02-10V, 2013 WL 3368236, at *23 (Fed. Cl. Spec. Mstr. June 12, 2013).

have the necessary information to determine that it is reasonable to award the prepayment of $5000 for Dr. Deisher's expert services in this case, or to award Petitioners $2,400 for the prepayment of costs for medical testing ordered at her request.

Additionally, Petitioners did not submit the retainer agreement that they allegedly signed agreeing to pay Dr. Deisher $5000 for her expert services in this case.   Nor did Petitioners submit documentation regarding any of the following: the hourly rate that Dr. Deisher will charge for her services in this case, the rate Dr. Deisher typically charges for her expert services, the customary rate for an expert with Dr. Deisher's qualifications, the number of hours Dr. Deisher anticipates expending in this case, and the types of tasks she intends to undertake in proffering her medical opinion on behalf of Petitioners.

Finally, Petitioners have submitted no invoice evidencing the costs for the medical tests ordered by Dr. Deisher,[8] nor have Petitioners submitted any evidence demonstrating that their medical insurance will not cover the costs of the testing.   In sum, I have absolutely no basis upon which to determine that the costs requested in this case are reasonable.

## IV

## CONCLUSION

Accordingly, for the reasons set forth above, I deny Petitioners' Application for interim costs.


/s/ George L. Hastings, Jr.
_____
George L. Hastings, Jr.
Special Master

---

[8]   Petitioners in the *Fuesel* case also initially sought prepaymnent of $2,400 to cover the costs of apparently the same tests ordered by Dr. Deisher.   However, in *Fuesel* I was later advised that the Fuesel family elected to pay for the tests with their own funds at a cost of $1,900. (*Fuesel v. HHS*, No. 02-95V, Decision Denying Petitioners' Application for Interim Costs filed March 19, 2014, slip. op. at fn. 3.)   Accordingly, it is unclear in this case whether the costs sought by Petitioners for prepayment of the medical testing requested by Dr. Deisher represents the actual cost of the testing.